**Date Signed:**
**August 19, 2015**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF HAWAII

| | |
|---|---|
| In re<br><br>SAIYONG O. CLARK,<br><br>    Debtor. | Case No.14-01089<br>Chapter 7 |
| SAIYONG O. CLARK,<br><br>    Plaintiff,<br><br>vs.<br><br>DANE S. FIELD, Trustee, and<br>STATE OF HAWAII<br>DEPARTMENT OF TAXATION,<br><br>    Defendants. | Adv. Pro. No. 15-90019<br><br>Re: Docket Nos. 9 and 17 |

### MEMORANDUM OF DECISION REGARDING
### MOTIONS TO DIMISS AND FOR SUMMARY JUDGMENT

In this adversary proceeding, the chapter 7 debtor seeks a declaratory judgment determining that certain unrecorded state tax liens attach to her property and are not avoidable, or in the alternative that the state tax claims are priority unsecured claims

under section 507(a)(8). The bankruptcy trustee has filed a motion to dismiss and the debtor has filed a motion for summary judgment. For the following reasons, I will grant summary judgment in favor of the debtor on most issues.

## FACTS

The historical facts are simple and undisputed.

Prior to January 27, 2009, the debtor, Saiyong O. Clark, solely owned a condominium in Hilo. She also owned a residential property in Pahoa with her husband.

On January 27, 2009, Ms. Clark quitclaimed a half interest in the condominium to her sister. At the hearing on the motions, Ms. Clark's counsel acknowledged that Ms. Clark received no value in return for this transfer.

On December 28, 2009, the State of Hawaii Department of Taxation ("DOT") gave notice of the final assessment of certain income taxes against Ms. Clark and her husband. The taxes were for the calendar years 2004 through 2006. DOT made the assessments after auditing returns filed by Mr. and Ms. Clark. DOT also assessed general excise taxes against Mr. Clark only. The Clarks have never paid the taxes. DOT never recorded any notice of its tax lien in any recording office.

On June 3, 2010, Mr. and Ms. Clark conveyed the Pahoa property to their daughter for no consideration.

On June 25, 2010, Ms. Clark and her sister conveyed the Hilo condominium

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed 08/19/15   Page 2 of 15

to themselves and Ms. Clark's niece. This reduced Ms. Clark's interest in the condominium from one-half to one-third.

On August 13, 2014, Ms. Clark commenced her chapter 7 case. Mr. Clark has not filed a bankruptcy petition.

At the meeting of creditors, the trustee stated that he intended to seek avoidance of Ms. Clark's transfers of the Hilo condominium and the Pahoa property as fraudulent transfers.

On April 15, 2014, Ms. Clark commenced this adversary proceeding. Shortly thereafter, the trustee filed a separate adversary proceeding (Adv. P. No. 15-90023) asserting his avoidance claims. Ms. Clark has filed a counterclaim in that adversary proceeding which asserts the same claims set forth in her complaint in this adversary proceeding (among other claims).

## DISCUSSION

A.  Standards for Summary Judgment and Dismissal

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] In resolving a summary judgment motion, the court does not weigh evidence,

---

[1] Fed.R.Civ.P. 56(a), Fed. R. Bankr.P. 7056; *see also Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 707 (9th Cir. 2008).

3

but rather determines only whether a material factual dispute remains for trial.[2] In making this determination, the court views the evidence in the light most favorable to the nonmoving party and draws all justifiable inferences in favor of the nonmoving party.[3]

Additionally, the court may dismiss a complaint for "failure to state a claim upon which relief can be granted."[4] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[5] A formulaic recitation of the elements of a cause of action do not suffice.[6] Only if a complaint states a plausible claim for relief will it survive a motion to dismiss.[7]

Neither DOT nor the trustee argues that Ms. Clark's allegations are implausible or materially false. Both Ms. Clark's motion and the trustee's motion address the legal result that follows from the undisputed facts.

---

[2] *Covey v. Hollydale Mobilehome Estates*, 116 F.3d 830, 834 (9th Cir. 1997).

[3] *McSherry v. City of Long Beach*, 584 F.3d 1129, 1135 (9th Cir. 2009).

[4] Fed. R. Civ. P. 12(b)(6).

[5] *Compton v. Countrywide Financial Corp.*, 761 F.3d 1046, 1054 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[6] *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[7] *Icqbal*, 556 U.S. at 678.

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed 08/19/15   Page 4 of 15

B.  Procedural Issues

1.  Service on DOT

DOT argues that Ms. Clark did not properly serve her complaint on DOT and that the complaint should therefore be dismissed. DOT has waived this argument.

A defendant may assert insufficient service of process either in its answer or in a motion to dismiss.[8] The defendant waives this defense unless the defendant presents it in an answer or a motion to dismiss.[9] And the defendant can only file a motion to dismiss before filing an answer.[10]

DOT filed an answer that does not assert the defense of insufficient service of process. DOT can no longer file a motion to dismiss on that ground. Therefore, the defense is waived.

2.  Tax Injunction Act

DOT argues that the Tax Injunction Act[11] bars Ms. Clark's complaint for declaratory relief. DOT acknowledges, however, that the Tax Injunction Act does not override provisions of the Bankruptcy Code that empower the bankruptcy court to

---

[8] Fed. R. Civ. P. 12(b)(5), made applicable by Fed. R. Bankr. P. 7012(b).

[9] Fed. R. Civ. P. 12(h)(1)(B), made applicable by Fed. R. Bankr. P. 7012(b).

[10] Fed. R. Civ. P. 12(b)(5), made applicable by Fed. R. Bankr. P. 7012(b).

[11] 28 U.S.C. § 1341.

5

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed  08/19/15   Page 5 of 15

decide state tax issues. Citing the Ninth Circuit's decision in *Ellett*,[12] DOT argues that there are only three such provisions: section 505, which authorizes the bankruptcy court to determine the "amount and legality" of all taxes; section 507(a)(8), which gives priority status to certain tax claims; and section 523, which renders certain tax claims nondischargeable.

DOT's reading of *Ellett* is incorrect. In the first place, *Ellett* cited a fourth provision, section 362, which DOT omits. More importantly, however, *Ellett* does not purport to provide a complete list of all tax-related provisions of the Bankruptcy Code; rather, the court offered only "[a] brief overview of the Code's treatment of bankruptcy related tax matters . . . ."[13]

Section 506 of the Bankruptcy Code specifies the treatment of secured claims, including tax claims secured by statutory liens. 28 U.S.C. § 157(b)(2)(K) empowers the bankruptcy court to make "determinations of the validity, extent, or priority of liens . . . ." These bankruptcy-specific provisions override the general provisions of the Tax Injunction Act.

3.   Standing

In order to have constitutional standing, a plaintiff must prove three things. First, he must prove that he has suffered "'injury in fact'--an invasion of a legally

---

[12] *Goldberg v. Ellett (In re Ellett)*, 254 F.3d 1135, 1147-48 (9th Cir. 2001).

[13] *Id.* at 1147.

6

protected interest which is (a) concrete and particularized . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical[.]'"[14] Second, "there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not ... th[e] result [of] the independent action of some third party not before the court.'"[15] Third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"[16] A person must have a "personal stake in the outcome of the controversy" and may not prove standing by asserting the rights of a third party.[17]

Ms. Clark has standing to assert the claims set forth in her complaint. The taxes are secured by liens on the Clark family residence.[18] Mr. and Ms. Clark will probably lose the home unless they can make an agreement with all parties holding claims against the residence. They are trying to establish that the tax liens consume all of the equity in their home; if they are successful, the bankruptcy estate's interest in the home would be worthless, and the trustee would likely abandon it. They presumably think that their chances of saving their home are better if they must negotiate with

---

[14] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted).

[15] *Id.* (citations omitted).

[16] *Id.* at 561 (citations omitted).

[17] Black Faculty Ass'n of Mesa College v. San Diego Community College Dist., 664 F.2d 1153, 1155-56 (9th Cir. 1981).

[18] Mr. and Mrs. Clark no longer have title to the residence, because they transferred it to their daughter, but they still list the residence as their street address in their bankruptcy petition.

7

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed  08/19/15   Page 7 of 15

two parties (DOT and the mortgagee) rather than three (DOT, the mortgagee, and the trustee).[19] Ms. Clark's desire to save the family home is sufficient to confer standing upon her.

Ms. Clark has another interest in getting the tax claims paid: the income taxes are joint liabilities of her and her non-debtor husband. Her tax debt to DOT will be discharged, as DOT's counsel candidly acknowledged at the hearing.[20] But Ms. Clark's discharge will not benefit her husband.[21] Ms. Clark has a legitimate and concrete interest in her husband's financial condition, because financial troubles frequently cause or aggravate marital troubles.

The trustee argues that Ms. Clark filed this adversary proceeding "ostensibly on behalf of the State of Hawaii Department of Taxation," so therefore she does not have standing. I disagree. Ms. Clark filed this adversary proceeding for her own benefit. If the trustee avoids the transfers and sells the property, the family home will be gone. Further, if the trustee pays DOT less than 100% of its claims, her husband will still be liable on their joint debt and the debt on which he is solely liable. That, as I discussed above, will more than likely lead to marital difficulties, and perhaps another

---

[19] Ms. Clark's effort will be further complicated by the fact that the trustee will probably attempt to reach an agreement with DOT that will permit the trustee to sell the property and realize some benefit for the estate. Nothing in this decision is intended to foreclose that possibility.

[20] The taxes are too old to satisfy the requirements for nondischargeability. *See* 11 U.S.C. §§ 523(a)(1), 507(a)(8)(A).

[21] *Id.* § 524(e).

8

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed 08/19/15   Page 8 of 15

bankruptcy.

Further, the Bankruptcy Code specifically allows a debtor to object to a claim by filing an adversary proceeding and requesting a declaratory judgment.[22] The state filed an unsecured claim. Ms. Clark objects to that characterization and has requested a declaratory judgment and a determination that the claim is secured. The debtor's actions are within the scope of the statute and rules.

Therefore, I conclude that Ms. Clark has standing.

4.   Ripeness

The trustee argues that the court should not decide the validity of the tax liens until the court decides whether to avoid the transfers of the properties to Ms. Clark's relatives. The trustee contends that the validity of the tax liens will not be relevant to the estate unless and until the trustee recovers the properties and is in a position to offer them for sale.

The trustee relies on the doctrine of ripeness. Article III of the Constitution limits courts to deciding "cases and controversies."[23] As one court put it, the judicial branch has the "'theoretical role as the governmental branch of last resort.'"[24] Consequently, the Constitution precludes courts from deciding "abstract

---

[22] 11 U.S.C. § 502(a); Fed. R. Bankr. P. 3007; Fed. R. Bankr. P. 7001(9).

[23] U.S. Const. art. III, § 2.

[24] *VanderKam v. VanderKam*, 776 F.3d 883, 888 (D.C. Cir. 2015).

9

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed  08/19/15   Page 9 of 15

disagreements."[25] Courts may only resolve "'fully crystalized'" disputes.[26] In order to determine whether a dispute is ripe for adjudication, a court must ask whether "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[27]

There is a "substantial controversy" between the parties. The trustee has a duty to liquidate assets of the estate and pay creditors in the priority specified by law. The trustee has sued to recover the properties in fulfillment of that duty. Ms. Clark, on the other hand, wants to keep her interest in the property and have her joint debts with her husband paid first. As a result, the trustee's and Ms. Clark's legal interests are adverse.

This is not a speculative or "abstract disagreement" between the trustee and the debtor. The trustee has already filed an adversary proceeding to avoid the transfers of Ms. Clark's property.

Finally, the dispute is "of sufficient immediacy and reality to warrant" deciding the case. The trustee has made his intentions known: he intends to avoid the transfers and sell the property. But the trustee would not spend estate funds in an effort to

---

[25] *Id.*; *Thomas v. Anchorage Equal Rights Com'n*, 220 F.3d 1134, 1138 (9th Cir. 1999) (quoting *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148 (1967)).

[26] *VanderKam*, 776 F.3d at 888.

[27] *Lake Carriers Ass'n v. MacMullan*, 406 U.S. 498, 506 (1972) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed  08/19/15   Page 10 of 15

avoid the transfers unless avoidance unless it were likely to benefit the estate. If the tax liens attach to the property, the properties may be overencumbered, and prosecution of the avoidance litigation may be uneconomical. Deciding the tax lien issues now is appropriate.

Therefore, I conclude that this case is ripe for adjudication.

C. Tax Liens under Hawaii Law

Hawaii's statutes provide DOT with a lien on all of a taxpayer's property in the amount of all the tax the taxpayer owes to the State of Hawaii.[28] The lien "for the tax, including penalties and interest thereon, arises at the time the tax is assessed . . . ."[29] DOT may file a record of the lien in the Bureau of Conveyances.[30] The State's lien is superior to all other interests except a mortgagee, a purchaser, or a judgment creditor whose lien arose before the State's.[31] A "purchaser" does "not include any person to whom property or an interest in property is conveyed . . . as trustee, assignee, or agent for the benefit of one or more creditors, other than mortgage bondholders."[32]

Under this statute, DOT obtained an enforceable lien on the debtor's property

---

[28] Haw. Rev. Stat. § 231-33(b).

[29] *Id.*

[30] Haw. Rev. Stat. § 231-33(f).

[31] Haw. Rev. Stat. §§ 231-33(b), (c).

[32] Haw. Rev. Stat. § 231-33(a).

11

as soon as it assessed the taxes. While the statute permits DOT to file a record of the lien to put others on notice, the statute does not require it. Hawaii courts have interpreted the use of "may" in statutes as permissive, rather than mandatory, which accords with the word's plain meaning.[33] Since "may" is permissive, the state did not have to record the tax lien for it to be effective.

D. Avoidance of Tax Liens under 11 U.S.C. § 545

Section 545 allows the bankruptcy trustee to avoid a statutory lien that

> is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists, except in any case in which a purchaser is a purchaser described in section 6323 of the Internal Revenue Code of 1986, or in any other similar provision of State or local law . . . .[34]

Thus, section 545(2) allows the trustee to avoid a lien that would be unenforceable against a hypothetical bona fide purchaser who purchased the property when the debtor filed bankruptcy. The exception is if the purchaser is one described in section 6323 of the Internal Revenue Code or "any similar provision of State or local law[.]"

All the parties in this proceeding agree that section 545 does not allow the

---

[33] *In re Estate of Rogers*, 81 P.3d 1190, 1198-99 (Haw. 2003) ("[W]e believe that the term "may," as set forth in HRS § 560:2–114(a) . . . is permissive, and not mandatory . . . ."); *see Kaho'ohanohano v. Department of Human Services*, 178 P.3d 538, 579 (Haw. 2008)).

[34] 11 U.S.C. § 545(2).
12

trustee to avoid the state's tax lien.[35]

E.     Preservation of Avoided Transfers under 11 U.S.C. § 551

The trustee argues that he has the power under section 544 to avoid the gratuitous transfers from Ms. Clark to her relatives, that the transfers will be automatically preserved for the benefit of the estate under section 551, and that, after the avoidance, the bankruptcy estate will take the properties free of the state's tax lien.[36] According to the trustee, the transferees were "purchasers" under the Hawaii statute who took the property free and clear of the tax lien. Once the avoided properties revert to the bankruptcy estate, the trustee will step into the transferee's shoes.

The key premise of the trustee's argument is that Ms. Clark's relatives are "purchasers." But a gratuitous transferee is not a "purchaser" within the plain meaning of that word.[37] One dictionary definition of "to purchase" is "to acquire by the payment of money or its equivalent."[38] Black's Law Dictionary's definition of

---

[35] I assume, without deciding, that section 545 is the exclusive means to avoid statutory liens. *In re Loretto Winery, Ltd.*, 898 F.2d 715, 717-18 (9th Cir. 1990); *In re Sullivan*, 254 B.R. 661, 666 (Bankr. D. N.J. 2000); *In re Tape City, U.S.A., Inc.*, 677 F.2d 401 (5th Cir. 1982); 5-545 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 545.01 (16th ed. 2015), LexisAdvance.

[36] Dkt. 28 at 6-7.

[37] *State v. Pali*, 300 P.3d 1022, 1028-29.

[38] *Purchase*, Dictionary.com, http://dictionary.reference.com/browse/purchaser (last visited August 18, 2015).

13

U.S. Bankruptcy Court - Hawaii    #15-90019    Dkt # 50    Filed  08/19/15    Page 13 of 15

"purchaser" is similar: "[s]omeone who obtains property for money or other valuable consideration; a buyer."[39] The transferees in this case were not "purchasers," since all the parties agree that they did not pay anything for the properties. (If they had paid for the properties, the fraudulent transfer claim would not be so strong.)

The trustee cites section 231-33(a)(1), which says that certain parties are not "purchasers."[40] The trustee argues that anyone not listed in that section is a "purchaser." That reading is untenable. If the trustee's argument were correct, a thief would be a "purchaser" because section 231-33(a)(1) does not say that thieves are not purchasers. The logical and sensible reading of the statutes is that a "purchaser" is anyone who is a purchaser within the common meaning of that term and whom section 231-33(a)(1) does not exclude.

Section 551 of the Bankruptcy Code does not change the result. "A trustee who avoids an interest succeeds to the priority that interest enjoyed over competing interests."[41] Ms. Clark's transferees were not "purchasers," so they took the properties subject to the tax liens. If the trustee avoids the transfers and recovers the properties,

---

[39] *Purchaser*, Black's Law Dictionary (10th ed. 2014), WestlawNext.

[40] Haw. Rev. Stat. § 231-33(a)(1) ("The terms "mortgagee", "pledgee", and "purchaser" do not include any person to whom property or an interest in property is conveyed (A) as security for or in satisfaction of an antecedent or pre-existing debt of a debtor who is insolvent within the meaning of the Bankruptcy Act, or (B) as trustee, assignee, or agent for the benefit of one or more creditors, other than mortgage bondholders.").

[41] *Retail Clerks Welfare Trust v. McCarty (In re Van de Kamp's Dutch Bakeries)*, 908 F.2d 517, 519 (9th Cir. 1990).

14

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed 08/19/15   Page 14 of 15

he will succeed to the priority Ms. Clark's transferees held, which was subject to DOT's tax liens. In other words, if the trustee succeeds in avoiding Ms. Clark's transfers, his position is only as good as the transferees'.

F.  Priority Status of DOT Claims

Ms. Clark asks the court to determine that, if the tax liens are not secured, the tax claims are entitled to priority status. I will deny this request for two reasons.

First, as indicated above, I will decide that the tax claims are secured, so it is not necessary to decide whether they would have priority status if they were unsecured.

Second, DOT's counsel acknowledged at the hearing that the taxes are dischargeable because they were assessed so long ago. Dischargeable taxes are not entitled to priority.[42]

## CONCLUSION

Ms. Clark is entitled to a judgment determining that the taxes described above are secured by liens on her residence and by the half interest in the condominium that she owned when the taxes are assessed. Counsel for Ms. Clark shall submit a proposed final judgment disposing of all claims and parties in this adversary proceeding.

## END OF ORDER

---

[42] 11 U.S.C. §§ 507(a)(8), 523(a)(1)(A).

U.S. Bankruptcy Court - Hawaii   #15-90019   Dkt # 50   Filed  08/19/15   Page 15 of 15